[Crim. No. 6566. In Bank. May 10, 1960.]

THE PEOPLE, Respondent, v. HERMAN SYLVIA,
Appellant.

Herman Sylvia, in pro. per., and Earl Klein for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

PETERS, J.—A hearing was granted in this case because of a number of procedural errors that occurred in the court below. These procedural irregularities involved substantial delays in obtaining the record on appeal, claimed omissions from the record, and claimed errors in preparing and certifying the record. Serious charges were made against the attorney who had been retained by appellant to present the appeal. Most of these errors were cured by the granting of this petition, by permitting defendant to employ his present counsel, and by permitting such counsel to file supplemental briefs.

Defendant was charged with four separate sex crimes. Counts one and two charged violations of sections 288a and 288 of the Penal Code, respectively, with one Barbara, then 12 years of age. Count three charged a violation of section 288 of the Penal Code upon the body of Patty, then a 10-year-old child. Count four charged the statutory rape of one Sandra, then 16 years of age. The rape charge, on motion of the prosecution, was dismissed during the trial.

On the merits, the case is not a close one. The defendant was tried before the court, a jury having been waived. He was found guilty of the offenses charged in counts one and three and not guilty of the offense charged in count two. The court then appointed two psychiatrists to examine defendant and to report back to the court their opinions as to whether or not he was a sexual psychopath. On the basis of their reports, the court found defendant to be a sexual psychopath and ordered that he be committed to the Atascadero State Hospital for a period not to exceed 90 days for observation and diagnosis. The superintendent of the hospital thereafter submitted to the court his opinion that defendant was a sexual psychopath and that he could benefit from care and treatment. The court then ordered that defendant be committed to the hospital for an indeterminate period.

Defendant spent a year at Atascadero State Hospital and then was returned to the court. Criminal proceedings were reinstated, probation was denied and defendant was sentenced to the state prison.

The record discloses, regarding count one, the following facts which are supported by substantial evidence. On October 2, 1954, defendant took Barbara, then age 12, to the Los Angeles County Fair at Pomona. Defendant picked her up at noon at her home in Rialto, where she lived with her parents and sister. Defendant had known Barbara's family for approximately two years, and, when he stated that he wanted to

take Barbara and another girl, named Sandra, to the fair, Barbara's mother consented on condition that Sandra went along with them. Barbara and defendant drove to the fair in defendant's car but did not take Sandra with them. They left the fair at eight o'clock that night and started back home. Somewhere between Ontario and Colton, defendant stopped his car on the dirt shoulder of the freeway and then asked Barbara to participate in the act of perversion described in section 288a of the Penal Code. Barbara finally consented and the act was committed. Defendant then drove back to Barbara's home, arriving at about ten o'clock. He accompanied Barbara into the house and apologized to her mother for bringing the girl home late. Barbara made no complaint to her parents about defendant's conduct, and never mentioned it to anyone until the summer of the following year when she was questioned by a police officer.

Defendant, at the trial, denied the conduct described by Barbara, but her testimony was corroborated by admissions made by defendant to the police officers after his arrest.

There is also substantial evidence to support the conviction under count 3. Suffice it to say that the record discloses that the defendant copulated his mouth with the private parts of Patty, a 10-year-old child. This, of course, is sufficient to show a violation of Penal Code, section 288, the crime charged in count 3.

Defendant's primary contention is that the trial court committed prejudicial error in admitting into evidence testimony and photographs involving other offenses than those charged. Four separate errors are alleged.

The first concerns the introduction, over objection, of an admission by defendant that he committed on Barbara, another and separate act than the one charged.

While it is true that evidence of other crimes is generally inadmissible (*People* v. *Wade*, 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116] ; *People* v. *Albertson*, 23 Cal. 2d 550, 576 [145 P.2d 7] ; Witkin, California Evidence, § 135, p. 158), there are a number of exceptions to the rule. Thus, evidence of other offenses is admissible if material to the proof of the crime charged (*People* v. *Kynette*, 15 Cal.2d 731, 746 [104 P.2d 794] ; *People* v. *Piascik*, 159 Cal.App.2d 622, 628 [323 P.2d 1032]), to show motive, intent or knowledge (*People* v. *Westek*, 31 Cal.2d 469, 480 [190 P.2d 9]), and to show a common plan or scheme (*People* v. *Peete*, 28 Cal.2d 306, 317 [169 P.2d 924]). In cases involving sex crimes, evi-

dence of other not too remote sex offenses with the prosecuting witness is admissible to show a lewd disposition or the intent of the defendant towards the prosecuting witness. (*People* v. *Wertz,* 145 Cal.App.2d 395, 399 [302 P.2d 613] ; *People* v. *LaMantain,* 89 Cal.App.2d 699, 701 [201 P.2d 598] ; Witkin, California Evidence, § 136, p. 159.) The latter rule is applicable here. There was no error in receiving into evidence defendant's admission. No objection was raised or could be raised as to the remoteness of the incident.

It is next argued that the court erred in permitting the defendant to be questioned as to alleged gifts he gave to the complaining witness in another case. A police officer had testified that he had first arrested defendant on a misdemeanor warrant charging possession of lewd pictures. Defendant then had tried to explain this incident by testifying that he had been driving a Mrs. Fisher and her children in his car, at which time the children had opened a cigar box that was in the back of the car. Both the children and Mrs. Fisher had seen nude pictures which he kept in the box. Defendant stated that he had cut the pictures out of a nudist magazine. At any rate, Mrs. Fisher was quite upset and notified the police. It does not appear what happened as to this charge. After this evidence came in, the prosecution was permitted to question defendant as to a bottle of vodka given by him to Mr. Fisher, a bottle of cologne given to Mrs. Fisher, and candy given to the Fisher children. This was done apparently on the theory that such gifts constituted an attempted bribe. Conceding that, under the general rule pertaining to evidence of other crimes, this may have been error, it does not appear that, considering the convincing evidence of defendant's guilt, he suffered any prejudice. This evidence was trivial, and could not possibly have been prejudicial.

Defendant's next contention is that the cross-examination of Sandra, which cross-examination brought out other offenses committed by defendant, far exceeded that necessary for impeachment purposes. Count 4, which involved statutory rape of Sandra, had been dismissed on the prosecution's motion prior to the time she was called as a defense witness. Her testimony on direct examination contradicted some of the testimony of Barbara. On cross-examination, Sandra testified, over objection, that she had accompanied defendant to a nudist camp, that defendant took photographs of her there in the nude, and that she had spent the night with defendant and one Marilyn in a hotel in Long Beach. She further testified

that Marilyn had taken nude photographs of her in Long Beach. Photographs of Sandra and Marilyn in the nude were admitted into evidence. Sandra at first denied, but later admitted, that she had, prior to the trial and the preliminary hearing, made statements to the police to the effect that she had had sexual intercourse with the defendant on various occasions.

Defendant argues that since evidence tending to show the witness' bias had already been introduced (i.e., that defendant lived in Sandra's grandmother's home, that he bought Sandra gifts, and that she looked on him as a grandfather), it was an abuse of discretion to permit the additional cross-examination above noted. No abuse of discretion appears. There was no jury present. We may assume that the trial judge received and considered the evidence solely for impeachment purposes.

There appears to be no prejudicial error, if any error exists at all, in the rebuttal testimony permitted. This testimony was in response to testimony elicited by the prosecution on cross-examination of defendant and Sandra. It will be remembered that Sandra had testified that Marilyn had taken photographs of her in the nude in Long Beach. Defendant, on direct, made a complete denial of improper conduct with Barbara, Patty, Sandra, or with anyone else. He denied having taken nude pictures of Sandra in Long Beach, and denied knowing anything about it. On cross-examination defendant again denied that he had taken the photographs of Sandra, stating, ''I never took any of those pictures'' and ''I don't know anything about them.'' Defendant was asked whether he had taken Marilyn to a hotel in Long Beach. Defendant's objection to this question was overruled, the trial court saying, ''I suppose that can be received on the theory of other offenses of a similar nature to show a tendency.'' The Attorney General concedes that this language of the trial court is ''unfortunate,'' but it is argued that the error is not prejudicial. We agree. The strong and convincing evidence of the defendant's guilt leads to the conclusion that this minor error was not prejudicial.

Defendant then admitted that he might have taken Marilyn to a hotel in Long Beach. He then admitted that he registered as ''Herman Sylvia and daughter, Marilyn,'' and stayed several days. Defendant denied any improper conduct with the girls in Long Beach, but admitted that he had told the arresting officers the contrary. On redirect examination there was a

further denial of the picture-taking in Long Beach as well as a broad denial of any conduct of a sexual nature with any of the girls involved while in Long Beach.

On rebuttal the prosecution called Marilyn as a witness. She testified that she had accompanied defendant to a hotel in Long Beach on several occasions, and on some of these occasions Sandra came also. She further testified that defendant had taken nude pictures of her and Sandra and denied that she had taken any pictures of Sandra. This testimony directly contradicted that of defendant and of Sandra. Defendant's denial of improper sexual conduct was contradicted by Marilyn's testimony that both she and Sandra had been in bed nude with defendant on different occasions. On cross-examination counsel for defendant objected to the questioning of Marilyn on the ground that evidence of other offenses with minor females other than the prosecuting witness was inadmissible. The trial court overruled the objection on the ground that the testimony was proper to rebut the testimony offered by the defendant.

The ruling of the trial court was correct. In *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], evidence of other offenses with persons other than the prosecuting witness was held to be admissible in rebuttal. In that case the defendant had made a broad statement that he had never ''at any time'' committed any improper sexual act upon any boy. The court held that rebuttal testimony tending to show such acts with other boys was admissible to contradict the defendant's testimony.

The same theory applies here. Defendant denied having taken any nude photographs in Long Beach, as well as any improper conduct with any girl at any time in Long Beach. Sandra testified that Marilyn had taken the nude photographs. Marilyn's testimony on rebuttal contradicted this testimony and was thus proper.

Defendant's other contentions on the merits are untenable and require but little discussion. Patty's testimony did not require corroboration (*People* v. *Jaquish,* 170 Cal.App. 2d 376, 378 [338 P.2d 974]), and, even assuming that Barbara was an accomplice, her testimony was corroborated by defendant's admissions. Defendant claims that these admissions were not voluntarily made, but the record shows otherwise.

Appellant contends that he was not taken before a magistrate after his arrest within the time required by law, and that he was not brought to trial within the required 60 days. These arguments are without merit. The record shows

that appellant was first arrested on a misdemeanor warrant and was then released on bail. There is nothing in the record to substantiate his contention as to the claimed delay in taking him before a magistrate. ▮▮▮ As to the claimed denial of a speedy trial, the record shows that the information was filed on September 2, 1955, and appellant was arraigned on the same date. September 16th was set for entry of plea and continued to September 30th. On that day appellant moved the court for separate trials and to dismiss the information. These motions were taken under advisement and a hearing thereon continued to October 14th. On that date the motions were denied and appellant withdrew his motion to dismiss and entered a plea of not guilty. The matter was then set for trial on November 17, 1955, and a jury was ordered. The motion for severance was continued to October 28th and then continued to November 4, 1955, at appellant's request. On that date appellant withdrew his motion for severance and waived trial by jury. On November 17, 1955, the date originally set for trial, the matter was referred to another department of the court for resetting, and, on November 18th, the trial was reset for December 20, 1955. The trial started on that date. The record shows that most of the continuances were had for the purpose of hearing motions made by appellant, and, on at least one occasion, a continuance was had at appellant's request. Appellant made no objection to these continuances, and no protest was made as to the time of trial. Under the circumstances appellant may not now raise this issue on appeal. (*People* v. *Akers,* 143 Cal.App.2d 224, 228-229 [299 P.2d 398].)

▮▮▮ Appellant argues that certain photographs and cards introduced in evidence were secured as a result of unreasonable search and seizure. These photographs and cards were found in appellant's room, to which the officers were lawfully admitted when they took appellant there upon his arrest on the misdemeanor warrant referred to above. Although the record indicates that the officers were acting without a search warrant, there is evidence to the effect that the defendant consented to the search of his room. Furthermore, the question about the unlawful search and seizure was not raised at the trial court and cannot be raised for the first time on appeal. (*People* v. *Jaquish,* 170 Cal.App.2d 376, 379 [338 P.2d 974] ; *People* v. *Akers,* 143 Cal.App.2d 224, 229 [299 P.2d 398].)

As already noted, most of the procedural irregularities which

occurred in the trial or appellate courts have been cured by the granting of this petition for hearing, by the retention by appellant of new counsel, and by the filing by such counsel of a supplemental brief in this court. For this reason, it is unnecessary to consider the claimed inadequacy of defendant's representation on appeal before the District Court of Appeal, the failure of that court to consider defendant's petition for rehearing, and the other claimed procedural errors committed by the appellate court.

Several other questions are presented, however, relating to the preparation, filing, service, certification and adequacy of the reporter's and clerk's transcripts. Volumes 1 and 2 of the reporter's transcript were filed with the clerk on November 24, 1958. Volume 3 was not delivered to the clerk until January 9, 1959. The affidavit of mailing contained in the clerk's transcript indicates that the clerk's and reporter's transcripts were mailed to the defendant and to the Attorney General "on the 30th day of January, 1959, and on the 12th day of January, 1959, respectively." It is also indicated that the transcripts were personally delivered to the district attorney on January 12, 1959. On January 29, 1959, the judge certified that no objection had been made to the reporter's transcripts. That is the only certification of the reporter's transcript that is required of the judge by the rules. The date of the clerk's certification of the clerk's transcript is January 30, 1959.

 There is no showing that the judge certified the reporter's transcript prior to the time volume 3 was delivered to defendant. The most reasonable assumption, based on the facts in the record, is that defendant was in possession of all three volumes several weeks prior to the judge's certification. It is also reasonable to assume, there being no showing to the contrary, that the complete reporter's transcript was mailed to the defendant on January 12, 1959, and the clerk's transcript on January 30, 1959. It is not shown that any objection of defendant came to the attention of the trial judge, so that his certification was proper.

There is no certification by the judge of the clerk's transcript, as is apparently required by rule 35(c) of the Rules on Appeal. That rule, referring to both transcripts, provides, in part: "Unless a proposed correction is served and filed within 5 days after delivery of the original transcripts to the judge, the judge shall certify on the original that no objection was made thereto within the time allowed by law, and shall

immediately redeliver the transcripts to the clerk.'' The only objections which the defendant ever raised in regard to the adequacy of the transcripts were raised in a document filed in the appellate court on May 12, 1959. This document was entitled ''MOTION TO HALT ALL PROCEEDINGS in REPLY TO NOTICE TO APPEAR MAY 12, 1959,'' and was treated by the appellate court as a motion to augment the record on appeal.

 The defendant contended that ''the proceedings of the Preliminary Hearing, the record of Bail, the record of the evidence, as taken from your Appellant's home, from the Police Property Office, and many other items of a very material character and substantial issue are withheld and are not shown.'' The defendant not having applied for these documents in his notice of appeal or his notice to prepare transcripts, the clerk was not required to include them in the record on appeal (rule 33(a), Rules on Appeal). Thus, the irregularity involved in the failure of the trial judge to certify the clerk's transcript to the effect that no objections had been made as required by rule 35(c) in no way prejudiced appellant.

 It should be mentioned that it does appear that volume 3 of the reporter's transcript was not filed within the time provided in rules 35(b) and 35(d). This provides no ground for reversal and does not constitute a denial of due process. (*People* v. *Patterson,* 172 Cal.App.2d 334, 336 [342 P.2d 272]; *People* v. *Harrison,* 129 Cal.App.2d 197, 203 [276 P.2d 188].)

As a result of these irregularities an overly long period of time elapsed before the defendant received an adequate hearing on appeal. An adequate hearing has now been had. The resolution of the questions presented on the merits of this appeal adversely to the defendant makes the delay immaterial. Defendant has been in state prison during this period, and, of course, this time counts on his sentence.

The judgment is affirmed.

Gibson, C. J., Traynor, J., White, J., and Dooling, J. pro tem.,* concurred.

Schauer, J., and McComb, J., concurred in the judgment.

---

*Assigned by Chairman of Judicial Council.