[Crim. No. 10933.   Second Dist., Div. Three.   Oct. 25, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. ROBERT SNOWDY et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Cantillon & Cantillon, James P. Cantillon and Henry Melby for Defendants and Respondents.

SHINN, P. J.—The People appeal from an order dismissing an information upon a motion made pursuant to Penal Code section 995.

The information charged Robert Snowdy, Dick Colean and Jesse Mark McMann with violation of section 640 of the Penal Code. The section deals with unauthorized interference with telegraph and telephone lines. The section specifies numerous acts which are punishable either as a felony or misdemeanor, but the particular act charged was that appellants "did willfully, unlawfully, feloniously, fraudulently and clandestinely tap and make an unauthorized connection with a telephone wire and instrument under the control of a telephone company." As the section reads it is a violation if the unauthorized act is done wilfully and fraudulently, or clandestinely, and as the act of which respondents were accused was shown to have been committed wilfully and clandestinely fraud was not a necessary element of the offense.

There was evidence of the following facts: McMann had brought suit against his wife for divorce, he enlisted the services of Robert Snowdy and Dick Colean, who were licensed investigators; an electronic device, contained in a small box, was connected to a wire of the Pacific Telephone Company and to the wiring leading to the telephone instrument in the McMann home where Mr. McMann resided. The box, including the device, was fastened to the wall in the McMann garage. With the permission of a neighbor given to McMann

another wire had been connected to her power line. With this wire connected to a listening device and the connections made in the garage one could hear conversations taking place over the McMann telephone. A friend of the McMann's traced the wiring, found the equipment in the garage and informed Mrs. McMann, who disconnected the box, removed it with its contents and kept them.

It is rather fully argued that the evidence was insufficient to connect the respondents with the installation of the electric equipment. There was evidence that it was done without the consent of the telephone company.

Brief reference will suffice to show that the three accused actively cooperated in the unauthorized connection of the equipment with the line of the telephone company. The three men were seen together in Snowdy's car in the vicinity of the garage. Snowdy and Colean were seen sitting in a vehicle with no license plates, which was parked across the street; McMann had arranged the connection with the neighbor's power line and it was a reasonable inference that it led to a listening device in the parked vehicle. Mrs. McMann was unable to start her car, Snowdy appeared and replaced a part which he said he had removed in order to prevent her leaving before divorce papers were served on her; Colean served the papers and asked Mrs. McMann to give him the contents of the box, saying they were valuable to "us" and that they would leave if they were given the articles. There was also evidence which indicated that McMann endeavored to retrieve the articles from his wife. There was sufficient evidence of probable cause for the commitment of the three men.

The briefs do not enlighten us as to the court's reason for dismissing the information but from the arguments upon the motion it is clear that the court agreed with the principal reason urged by respondents for affirmance of the order, namely that "THE SUBSCRIBER TO TELEPHONE SERVICES WHO MAKES AN UNAUTHORIZED CONNECTION TO HIS OWN TELEPHONE SYSTEM CANNOT BE PUNISHED UNDER THE PROVISIONS OF PENAL CODE SECTION 640." The quotation is from the brief of McMann. Snowdy and Colean state the same proposition as follows: "IT IS NOT A VIOLATION OF PENAL CODE § 640 FOR THE SUBSCRIBER TO TELEPHONE SERVICE TO MAKE AN ATTACHMENT TO HIS OWN PRIVATE TELEPHONE LINE FOR THE PURPOSE OF OVERHEARING OR EAVESDROPPING ON CONVERSATIONS COMMUNICATED OVER SAID LINE."

Both the People and the defendants-respondents claim that

the decision of the court in *People* v. *Trieber*, 28 Cal.2d 657 [171 P.2d 1] supports their respective contentions. As we read the decision it sustains the position of the People and rejects that of the respondents. Trieber, a bookmaker, obtained telephone equipment and placed it in his two apartments; with the consent of other subscribers in the building he had connection made with their lines to the equipment located in his apartments, and used the service in his bookmaking business. He was indicted for violation of section 640, the indictment was dismissed and the order was reversed. Trieber contended that since he could have been prosecuted under section 591 of the Penal Code, which made it a crime to injure, etc. or make "any unauthorized connection with any line of telegraph or telephone" his offense was not a violation of section 640. McMann says the court held that "a third person would be liable under Section 640 if he had only the consent of the subscriber, though the subscriber himself would not be liable under that section." Snowdy and Colean say the court held that "although a subscriber is not liable to punishment under section 640, anyone authorized by him who makes a connection to his telephone line is guilty of Penal Code section 640, unless the telephone company joins in the authorization." Counsel misread the opinion. The court held that Trieber violated section 640 when he caused connections to be made with the lines of subscribers to be used in the transmission of messages over the equipment in his own apartment, all without the consent of the telephone company; his own consent and that of the subscribers was insufficient to avoid violation of section 640.

Section 640 applies to all persons, including subscribers. Telephone lines and equipment belong to the telephone company. The customer of the company buys service; he has no right to trespass upon the property of the company. Any connection made with a line of the company, without the consent of the company, is unauthorized. The holding in *Trieber* is summarized as follows: "Even if the line to which the connection is made should lead only to his station it would not be reasonable to allow the subscriber alone to authorize connections unknown to the company for the additional reason that he does not have exclusive use of this line. Other persons communicating over the line from an outside telephone are also within the protection of section 640, but they would not be protected if the subscriber alone could authorize a connection.

"Section 640 serves the purpose of protecting the secrecy of telegraphic and telephonic messages, not by making any subscriber the sole judge as to when and whether a connection shall be made, but by strengthening with criminal sanctions the control of the telegraph and telephone companies over their entire networks, so that a company may more effectively supervise all connections. It is of public concern that communication systems controlled by public utilities be supervised in such a manner that all persons using such facilities may be assured that their communications cannot be intercepted by means of connections made without the knowledge and direction of the company."

■ Another contention is that if any offense was committed it was a violation of section 653j, Penal Code which, it is argued, superseded section 640. Section 653j is a comprehensive enactment on the subject of "eavesdropping or recording confidential communications" and declares certain acts are punishable as misdemeanors. A quite adequate answer to the argument is that the section provides that it shall not be construed to repeal other code sections, among them section 640.

■ Mr. McConnell, a police officer, was called by the People and questioned regarding conversations with McMann, Snowdy and Colean. He testified that the statements of McMann were made freely and voluntarily. McMann objected upon the ground that the statements about to be related were not free and voluntary. It does not appear that the court ruled upon the objection. The officer testified that the occasion for his conversation was McMann's visit to the police station when he was asked about the report of Mrs. McMann that he had committed a battery upon her. Asked to give the background of the complaint McMann admitted he had caused the telephonic equipment to be installed and that he had listened over it to his wife's conversations. The People rely upon the admissions of McMann as tending to support their claim that the evidence was sufficient to warrant the order of commitment.

It is contended by McMann that the testimony was admitted in violation of McMann's constitutional rights under the rule of *Dorado*.* Since the preliminary hearing was before the decision of *Dorado* the court was not called upon to pass upon the point and we shall not rule upon it. If the testimony is offered in the trial a proper objection can be interposed

*People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

in the light of evidence of the circumstances in which the statement was made. Moreover, the error, if any, in the admission of the officer's testimony would not be a ground for dismissal of the information. There was ample independent evidence to support the magistrate's order of commitment. (*People* v. *Olf,* 195 Cal.App.2d 97 [15 Cal.Rptr. 390].)

The People's notice of appeal was filed November 5, 1964; the record on appeal was filed May 6, 1965. McMann made a motion to dismiss the appeal. His attorney filed an affidavit which stated the above dates and also stated that the clerk's and reporter's transcripts had never been served on him and that he had received no notice except a postcard, dated May 6, 1965, from the clerk of this court, stating that the record on appeal had been filed. The notice of motion to dismiss was filed June 4, 1965. The motion was denied without opinion. It is contended that because of these facts the appeal is not properly before us and that McMann suffered prejudice.

The People obtained no extension of time for preparation of the record and have not at any time offered an excuse for noncompliance with rule 35(d), California Rules of Court.

It appears in the record that the clerk's and reporter's transcripts and the notices were sent to the attorneys for Snowdy and Colean. There was no showing on the motion to dismiss the appeal that McMann's attorney did not know of the service upon the other attorneys and have access to the transcripts. In denying the motion to dismiss this court considered the fact that notice of the motion had not been given until after the record had been filed.

The reviewing court has the power to dismiss an appeal for inexcusable failure to provide a record within the time allowed by rule 35 (*Estate of Dougherty,* 101 Cal.App.2d 576 [225 P.2d 613]), but it is a discretionary power.

Our views are the same as those which prompted us to deny the motion to dismiss. McMann's contention that the unexcused delay in perfecting the appeal was a deprivation of his constitutional right to a speedy trial was held to be untenable in *People* v. *Sylvia,* 54 Cal.2d 115, 125 [4 Cal.Rptr. 509, 351 P.2d 781].

Nevertheless there is merit in the argument that needless delay on the part of the People in the preparation of a record which it is their duty to provide may operate to the prejudice of one who has been freed of a criminal charge except for an appeal the People have taken. Although in the present case the defendants remained under the cloud of the

684

prosecution for about six months while the record was being prepared the fault was not wholly that of the People. The defendants knew of the failure to comply with the rules. They could have forced compliance by means of a motion to dismiss as soon as the time for preparation of the record had expired. They could have expedited a hearing of the People's appeal. A defendant who is respondent on an appeal by the People and who endures the disadvantage he may suffer through delay in preparation of the record, without any effort to ameliorate the harm until the record has been completed and filed, is not in a position to take advantage of the People's default. He must share in the responsibility for the creation of his own predicament.

A further contention of respondents is based upon facts that are apparently well known to the attorneys and which were agreed to in argument in the trial court. It appears that there was a former prosecution of the respondents for the same offense. In the preliminary examination the same evidence was introduced as in the instant proceeding but also some additional evidence, which the brief says was unlawfully seized from Snowdy. Respondents were bound over, an information was filed, and upon motion under section 995 was dismissed. The present prosecution was initiated, a preliminary examination was held; respondents were bound over and an information was filed. Upon the hearing under section 995 it was argued that the remedy of the People was to appeal from the first dismissal and that they could not start another prosecution in which they would use part, but not all, of the evidence adduced in the first preliminary hearing. A sufficient answer is that section 999 of the Code provides that an order setting aside an information under section 995 et seq. is not a bar to a further prosecution for the same offense. It was not necessary for the People to appeal from the first order of dismissal.

The order is reversed.

Ford, J., and Kaus, J., concurred.

Petitions for a rehearing were denied November 3 and November 12, 1965, and respondents' petitions for a hearing by the Supreme Court were denied December 22, 1965.