[Crim. No. 11966. Third Dist. May 31, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
OLIVER LAVELL BARNEY, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael R. Snedeker, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BLEASE, J.**—Defendant was convicted by a jury of one act of incest with his daughter (Pen. Code, § 285) and two lewd acts upon the body of his granddaughter, a child under the age of 14 years (Pen. Code, § 288, subd. (a)). He appeals from the judgment (order of probation). We reverse in part.

It is unnecessary to recapitulate the evidence in its sordid detail. The testimony shows defendant regularly had sexual intercourse with his three minor daughters and then with his granddaughter commencing when the girls were six or seven years old and terminating when they left his home. The pertinent details will be related in the course of the discussion.

## DISCUSSION

### I

The act of incest charged occurred in Riverside County. Defendant was tried in Butte County. At the outset of trial, before jury selection, defendant unsuccessfully objected to trial on the incest charge because the venire excluded residents of the district in which the crime was alleged to have occurred, in violation of the Sixth Amendment to the United States Constitution. We are constrained to accept his argument.

The federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, . . ." (U.S. Const., 6th Amend.) The exclusion of Riverside County residents from service on his jury in Butte County violates this requirement. (*People* v. *Jones* (1973) 9 Cal.3d 546 [108 Cal.Rptr. 345, 510 P.2d 705].) "[W]hile the outer limits of the 'district' as used in the Sixth Amendment are flexible, encompassing greater or smaller areas as the Legislature deems wise, the mandate of the Sixth Amendment remains immutable. The district, however large or small, from which the jury is drawn must include the area wherein the crime was committed." (*Id.,* at p. 554.)

The People argue the offense of incest is an exception to the holding in *Jones.* They rely on *People* v. *Martin* (1922) 188 Cal. 281 [205 P. 121, 21 A.L.R. 1399][1] which upheld a conviction for bigamy against the contention trial before a San Diego County jury was improper, because the marriage and bigamous cohabitation occurred in Orange County. *Martin* is inapposite. It applied the

---

[1]They also submit no Sixth Amendment right was violated here because of a jurisdictional statute addressing incest. Penal Code section 785 provides, inter alia: "When the offense of incest is committed in the jurisdictional territory of one competent court and the defendant is apprehended in the jurisdictional territory of another competent court the jurisdiction is in either court." The People argue the grant of jurisdiction to the court in the county of apprehension suffices because defendant was tried in a district "previously ascertained by law." However, the argument ignores the *Jones* holding and the Sixth Amendment's provision that the ascertained district must be one "wherein the crime shall have been committed." We perceive no conflict between Penal Code section 785 and our holding. Absent timely objection to the jury venire, Butte County had the power to adjudicate defendant's guilt or innocence of the incest charge.

California constitutional provision that " '[t]he right of trial by jury shall be secured to all, and remain inviolate.' " (*Id.*, at p. 285; see now Cal. Const., art. I, § 16.)[2] Here, defendant relies upon his *federal* constitutional right which is governed by *People* v. *Jones, supra,* 9 Cal.3d 546.

## II

Defendant next contends the trial court erred in allowing the prosecution to show he engaged in numerous uncharged criminal sex acts with his grand-daughter and daughters. Defendant admits the testimony is relevant, but argues it was "overwhelmingly prejudicial" as a matter of law. His argument addresses only one side of the admissibility equation: is the "probative value . . . substantially outweighed by the probability that . . . admission will . . . create substantial danger of undue prejudice . . . ." (Evid. Code, § 352.)

Evidence of uncharged offenses presents a generic prospect of undue prejudice which has created analytical difficulties in the field of sex offenses. (See, e.g., *People* v. *Wills-Watkins* (1979) 99 Cal.App.3d 451, 457-459 [160 Cal. Rptr. 289] (conc. opn. of Kaus, P. J.).) █ The relevancy of such evidence may be predicated on the ground such a person is more likely to have committed the offense on the occasion charged because of his bad character or disposition to do the acts. Evidence is inadmissible on such a ground because it is an instance of undue prejudice not substantially outweighed by probative value recognized by statute. (See Evid. Code, § 1101; *People* v. *Thomas* (1978) 20 Cal.3d 457, 464 [143 Cal.Rptr. 215, 573 P.2d 433].)

█ However, when the uncharged offense evidences the emotion of sexual passion toward a particular individual the statutory exclusion is inapplicable. (See *People* v. *Sylvia* (1960) 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Stanley* (1967) 67 Cal.2d 812, 816 [63 Cal.Rptr. 825, 433 P.2d 913]; 2 Wigmore, Evidence (Chadbourne rev. ed. 1979) § 398, especially fn. 1, pp. 446-447 (Cal. cases collected).) Such evidence tends to prove defendant would act to realize his desire on the occasion of the charged offense (*id.*, at § 399) and is not dependent upon defendant's bad character or his disposition to do wrongful acts.

---

[2]The *Martin* court reasoned: this provision was intended to preserve the existing right to trial by jury; under the statutes of England since 1604 bigamists had no right to be tried by a jury from the vicinage of the commission of the offense; accordingly, no existing right to such a jury is infringed by trial before a jury of the apprehending jurisdiction. *Martin*'s reasoning is not transferable. Unlike bigamy, incest was not a criminal offense under the statutory or common law of England. Before the Punishment of Incest Act of 1908 incest was punishable in England only by proceedings in the ecclesiastical courts. (Warmington, IV Stephen's Commentaries on the Laws of England (21st ed. 1950) 70.) Accordingly, the common law provides no ground for dispensing with the vicinage requirement. In addition, incest not involving marriage of the participants, unlike bigamy, is not a status offense, but is defined as an act. (Pen. Code, § 285.)

Defendant was charged with the final act of incest with daughter Ar. and two lewd acts on the body of L.L., his granddaughter. He moved *in limine* to exclude evidence of uncharged sex acts with his daughters L.M., Al. and Ar., and with L.L., his granddaughter. The prosecution opposed the motion on the ground similarities in the sexual conduct of defendant with each of the females warranted admission of the evidence under a theory of modus operandi. The trial court denied the motion based on the prosecution's offer of proof of similarities.[3]

■ In light of our resolution of other contentions of error we must evaluate the admissibility of the challenged evidence with respect to the one lewd act conviction (fixed by its proximity to Christmas), which is unchallenged save by this evidentiary contention. If the evidence is admissible to prove this offense, the conviction must be affirmed as it is not tainted by the errors confined to the other convictions.

We first examine the testimony of the granddaughter, L.L., concerning other uncharged acts of sexual intercourse. While generally admissible under the modus operandi theory, this evidence must first surmount the obstacle " 'the trier of fact is not aided by evidence of other offenses where that evidence is limited to the uncorroborated testimony of the prosecuting witness.' " (*People v. Thomas, supra,* 20 Cal.3d at p. 469, quoting from *People v. Stanley, supra,* 67 Cal.2d at p. 817.) Considered in a vacuum, L.L.'s testimony cannot survive this test. However, as distinguished from *Stanley,* her testimony is corroborated through the evidence of her grandfather's behavior with her aunts. If this evidence is admissible it provides significant corroboration of L.L.'s testimony.

Usually, modus operandi is employed to establish the identity of the perpetrator of the offense. (See e.g., *People v. Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267].) Its use may also support the credibility of a witness in a sex crime case (see *People v. Haslouer* (1978) 79 Cal.App.3d 818 [145 Cal.Rptr. 234]) by corroborating the details peculiar to the offenses. *Thomas* indorsed corroboration as a valid basis of admission but rejected the testimony as too remote.[4] (*People v. Thomas, supra,* 20 Cal.3d at p. 466.) However, as with the issue of identity, there must be sufficient minimally distinctive shared marks between the acts to lend credibility to the theory of

---

[3]No subsequent objection was made at trial to this variety of evidence. Accordingly, we consider only the generic issue and not whether any narrower objection to specific parts of the testimony at trial should have prevailed. (Evid. Code, § 353.)

[4]But see the criticism of this reasoning in 2 Jefferson, California Evidence Benchbook (Cont.Ed.Bar 1982) pages 1212-1213. Here there is no remoteness. The acts of defendant perpetrated on the children were not isolated. They occurred over a long period and each overlapped a new incestuous relationship. This provides continuity of conduct and insulates against a remoteness challenge. (See, e.g., *People v. Morris* (1906) 3 Cal.App. 1, 5 [84 P. 463].)

modus operandi.[5] (See *Thomas,* at pp. 468-469; also see *People* v. *Pendleton* (1979) 25 Cal.3d 371.)

*Thornton* holds the admission of evidence of uncharged sex crimes is proper to show the identity of the defendant when common factors with "some degree of distinctiveness tend to raise an inference of identity and thereby invest other-crimes evidence with probative value." (*Id.,* 11 Cal.3d at p. 756.) The inference must be strong enough to outweigh any prejudicial effect. The strength of the inference is evaluated by consideration of "(1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks." (*Ibid.*) The same analytic method is appropriate in this context.

We find a multiplicity of distinctive similarities between the defendant's charged sexual conduct and his sexual conduct on other occasions with the complaining witnesses and his other daughters. His modus operandi included: (1) first intercourse with his wards at the age of six to seven; (2) use of Vaseline for coital lubrication when they were young; (3) the same state of disrobement for the participants; (4) a propensity for one coital position; (5) a similar frequency of intercourse in each relationship; (6) arranging for opportunity by sending his wife on errands; (7) use of a salt water douche as a means of birth control after the onset of puberty; and (8) cessation of the relationship when the girls reached 17 years of age. These distinctive shared marks raise a sufficiently strong probative inference to warrant the admission of the other-crimes evidence offered to show modus operandi.[6]

Finally, was the conjunction of L.L.'s testimony and the corroboration of her aunts in the aggregate substantially more unduly prejudicial than probative? In this balance "if the *probative value* . . . is *strong* or *substantial,* the weighing process points toward admission of the evidence, even though there is danger of prejudice to the opponent." (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982) p. 589.) Here, the evidence of other crimes, considered as a whole, had strong probative value. It tended to prove defendant had a strong and continuing sexual desire for L.L. likely to have been realized on the occasion of the charged offense. We cannot say the trial court abused its discretion in denying defendant's motion to suppress it.

---

[5]Justice Kaus points out this caveat is often more honored in the breach than in the observance. (See *People* v. *Wills-Watkins* (1979) 99 Cal.App.3d 451, 457-459 [160 Cal.Rptr. 289] (conc. opn. of Kaus, P. J.).)

[6]Moreover, several of the distinctive shared marks were present in the particular lewd act episode under consideration. The testimony provides partial direct corroboration of the testimony of L.L., concerning how defendant acted on the charged occasion. Even an isolated sex act could be buttressed by evidence of other sex crimes if sufficiently distinctive marks obtain. The permissible inference chain of corroboration in such an instance is: the victim says he did the act in a characteristic fashion; others tell us when he does such acts he does so in this characteristic fashion; the victim could not know this unless he did the act to her as she says.

## III

■ Defendant also attacks an instruction permitting identification of the time of commission of the offense as "on or about" the date stated in the information. He argues this instruction may have misled the jury and deprived him of his defense concerning the act of lewd conduct with L.L. alleged to have occurred "on or about" February 8, 1981. As appears, the contention is correct.

The disputed instruction is patterned after CALJIC No. 4.71.[7] *People v. Jones, supra,* 9 Cal.3d at page 557, says it is error to give this instruction " 'if the People's evidence fixes the commission of the offense at a particular time to the exclusion of any other time and the defendant has presented evidence of an alibi as to that particular time. . . .' " The use note cautions the instruction is "improper if the evidence establishes two or more similar offenses upon either of which the jury might convict under a given count." (CALJIC No. 4.71 (4th ed. 1979) p. 152; see *People* v. *Gavin* (1971) 21 Cal.App.3d 408 [98 Cal.Rptr. 518].)[8]

■ Ordinarily, the People need not plead the exact time of commission of an alleged offense. (Pen. Code, § 955.) However, if the defense is alibi or, as here, lack of opportunity to commit the offense, the exact time of commission becomes critically relevant to the maintenance of the defense. An instruction which deflects the jury's attention from temporal detail may unconstitutionally impede the defense. The defendant is entitled as a matter of due process to have the time of commission of the offense fixed in order to demonstrate he was elsewhere or otherwise disenabled from its commission.

In this case the prosecutrix is L.L., age nine at the time of trial. In light of her age, the familial context and the continuity of defendant's depravation, it is unremarkable that she had a limited ability to fix dates for specific events of molestation. This presented the prosecution with a difficulty, as the crime is defined by statute as a prohibited *act* and the prosecutor was faced with charging the offense as such. (Pen. Code, § 285.) The dilemma was resolved by charging only two of the plethora of lewd acts, one fixed by its proximity to Christmas, the other fixed by its being the most recent molestation.

---

[7]CALJIC No. 4.71 (4th ed. 1979) provides: "When, as in this case, it is alleged that the crime charged was committed 'on or about' a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date."

[8]The trial court made no record concerning its reasoning. After expressing grave reservations concerning the widsom of the step it acceded to the prosecution's insistence that CALJIC No. 4.71 be given. The only illumination of its thinking implies abdication of its role. On the rejected defense alternative instruction is the notation: "On objection of DA refused so DA can have appellate review on this issue as test case."

The latter offense is the one addressed by the disputed "on or about" instruction. Defendant's conduct came to the attention of the authorities on February 10, 1981. When questioned, L.L. related various times as the most recent occurrence of the molestation. She first told the investigating officer it was Friday, February 6, then later Monday, February 9, after school. She affirmed the latter date at the preliminary examination. At trial she testified it was Sunday, February 8.

It is not essential to a valid conviction for the jury to accept the child's testimony when the act occurred. It is essential they agree the defendant committed the particular act she related as the terminal molestation. (See *People* v. *Madden* (1981) 116 Cal.App.3d 212, 214-219 [171 Cal.Rptr. 897].) While her testimony did not necessarily fix the time of that act as February 8, 1981, it did limit the time period within which the act occurred.[9] L.L. attended school on weekdays. The act she related occurred in the middle of a weekend day and must have happened on Saturday, February 7, or Sunday, February 8. Accordingly, the People's evidence fixed the commission of the offense to that period to the exclusion of any other time.

While defendant did not present a classic alibi defense ("I was not there"), he did present an analogous theory. He adduced testimony his son and daughter-in-law were present during the relevant time periods. Their testimony conflicts in material detail with the child's recitation how the offense occurred. There was also testimony numerous other molestations occurred between the Christmastime offense and the terminal offense in issue. These circumstances present a substantial possibility the jury was misled concerning the necessity to agree defendant molested the child during the weekend of February 7 and 8.

As we explained, *ante,* in section II, testimony concerning uncharged acts of molestation was admissible only in aid of proof of the charged offenses. The instruction that the prosecution need not specifically prove the time of the charged offense, coupled with the prosecution argument it need prove only a last act, not the time of the last act, was error.[10] This error was not harmless. The jury may well have believed defendant's witnesses concerning his lack of opportunity on the weekend in question or, because of its vagueness and alteration, disbelieved L.L.'s testimony of the terminal act. The jury may have convicted him on the erroneous assumption it was proper to conclude *some* terminal act in the unrebutted series occurred near the weekend in question. Accordingly, his conviction of the later of the two lewd act offenses cannot be permitted to stand.

[9]Accordingly, it was not error per se to reject the defense instruction that sought to limit the time period to that day. As defense counsel acknowledged in closing argument, the relevant time period was the entire weekend, not just Sunday.

[10]The jury was not instructed they must agree on the particular act constituting the crime. Although defendant has not raised the point this failure to instruct was held error in *People* v. *Madden* (1981) 116 Cal.App.3d 212, 219 [171 Cal.Rptr. 897].

The remaining issue considered in this appeal does not warrant publication under California Rules of Court, rule 976.

The judgment is reversed as to the convictions for incest and commission of a lewd act on the body of L.L. on or about February 8, 1981. The judgment (order of probation) is otherwise affirmed.

Evans, Acting P. J., and Carr, J., concurred.