[No. B010568. Second Dist., Div. Seven. Feb. 25, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID F. BRUNSON, Defendant and Appellant.

**COUNSEL**

Maureen J. Shanahan, under appointment by the Court of Appeal, and Michael R. Totaro for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Keith H. Borjon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORROW, J.*—**Defendant appeals from a judgment sentencing him to the state prison following his conviction by a jury of four counts of violation of Penal Code section 288, subdivision (a), lewd and lascivious acts upon two minors. He raises one basic issue on appeal, that the trial court erred in permitting evidence of uncharged sex acts upon one of the minor victims.

---

*Assigned by the Chairperson of the Judicial Council.

While we agree the admission of such evidence was erroneous, we find the error harmless and affirm the judgment.

Defendant's two children[1] are the victims in this case. The testimony of his daughter, age 14 at the time of the trial, and his son, age 12 at the time of the trial, supplied the direct and only evidence of his guilt.

Defendant has had custody of the two children for several years. They know nothing about the whereabouts of their natural mother. From 1979 to 1980 defendant lived on Razzak Avenue in Lancaster, California, with the two children. Defendant's daughter was about nine years old at that time. On April 8, 1981, defendant was jailed for drunkenness, and the children were removed from his custody. This was about the fourth time the children were left alone because the defendant was going to jail. The county Department of Social Services placed the children in the custody of defendant's sister-in-law, Mrs. Dorothy Brunson. About nine months later, in December of 1981, the children were placed in a foster home.

Approximately April of 1983, custody of the children was awarded to defendant by the family court after a hearing. At that time defendant was living in an apartment on Avenue J in Lancaster with a girlfriend and her minor child. About July 4, 1983, the girlfriend and her son moved out of the apartment. About two weeks later defendant and his children moved to another apartment in Lancaster on Kildare Street.

On August 18, 1983, Dorothy Brunson received a phone call from defendant's daughter. The young girl, age 12 at the time, was very upset and said she was trying to make contact with her social worker but could not do so. She told her aunt that she was afraid and said that she did not want to live with defendant any more because she was being harassed at night. Mrs. Brunson's husband, defendant's brother, was listening on the phone. He told the victim he would get ahold of Social Services, for her not to worry and to go back home because she was calling from a pay phone. The aunt and uncle called Social Services and met the social worker at defendant's residence the same day and took the children from his custody. Dorothy Brunson and her husband kept both children for about two weeks and thereafter kept the daughter. The son was placed in another foster home.

About two weeks after the August 18, 1983 incident, Mrs. Brunson had a conversation with the defendant's daughter. Only the two of them were present, and Mrs. Brunson asked the girl whether or not the defendant had made any sexual advances to her. The girl said, "Yes," and described

---

[1]There was evidence the defendant has other children not involved herein.

defendant's fondling with the upper and lower part of her body. She did not describe the acts in detail.

The alleged molestation of the girl was brought to the attention of the police on or about August 18, 1983, but the children were not interviewed by law enforcement until February 13, 1984. The delay was caused because Mrs. Dorothy Brunson told the sheriff's office the child was too shy and didn't want to talk. Defendant was arrested on these charges on February 10, 1984, three days prior to the sheriff's interview of the victims.

Both the children and Mrs. Brunson testified that defendant has a severe drinking problem. The daughter testified, "He gets drunk almost every day."

Both of defendant's children testified that during 1983 the defendant on numerous occasions performed various acts of sexual fondling, masturbation, and oral copulation on and with them. Generally, they testified that at night when he became drunk he would call one or the other, or both of them, into the living room and then perform these acts on them or have them masturbate or orally copulate him. Both victims described in explicit detail the various acts involved. Neither child had ever told anyone about the acts until the daughter told Dorothy Brunson after they had been removed from defendant's home. The son had joked about the acts with his sister but not in detail. The acts took place while they lived on Avenue J after the girlfriend moved out, and on Kildare Street.

There was no corroboration of the testimony of the children. No physical evidence was presented and no person testified to having observed any of the acts other than the children victims.

Dorothy Brunson was the first witness at the trial. After she testified, a hearing was held under Evidence Code section 402 concerning the admissibility of testimony by the daughter that the defendant had started molesting her when they lived on Razzak Street in 1979 or 1980. No charges were filed on these acts. The court held that the testimony was admissible. Although the basis for the order of admissibility is not quite clear, apparently it was on the basis that such evidence would show "[m]odus operandi, intent towards the victim and corroboration."

The daughter then testified that the molestation started on Razzak Street when she was about 10 years old, about 1979 or 1980, when she was in the second or third grade. The daughter testified in detail to a series of molestations that occurred while defendant was drunk. She stated the acts oc-

curred at night, about four or five times a week whenever her father got drunk.

Defendant testified in his own behalf and denied ever having had any *improper contact with the children*. Defendant also denied having an alcoholism problem, although he did admit that he had been arrested for public drunkenness and that the Bureau of Social Services was concerned about his intoxication when they took the children from his custody. He denied ever having been intoxicated around the children. Finally, he also denied that the children were taken from him because of his intoxication and denied the allegations of alcoholic abuse. Defendant testified that his children's minds were poisoned on the subject of his drinking by his sister-in-law, Dorothy.

Both children testified that they loved their father. The boy testified that he would still want to live with his dad if he could. The daughter, while saying she still loved her father, said she would not want to live with him any more because she did not want the molestation to continue.

When the daughter testified about the molestation that commenced in 1979 or 1980, no cautionary or limiting instruction was given to the jury by the court. The district attorney simply introduced the subject on direct examination to set a chronological pattern of molestation. Before argument, the court instructed the jury with CALJIC No. 2.50. (The court did not state what the "crime" was that was involved in the instruction.) The instruction told the jury they could consider this evidence under the characteristic method, plan, or scheme theory to show the existence of intent, a clear connection between the other offense and the offenses charged so that it may be logically concluded that if defendant committed one, he committed the other, the corroboration of the testimony of the prosecuting witness, and the existence of the intent, which is a necessary element of the crime charged.

■ We are constrained to conclude that the admission of the daughter's testimony regarding her having been molested by defendant in 1979-1980 was error.

The admissibility of evidence of uncharged crimes is governed by Evidence Code section 1101. Subdivision (a) of that section provides that evidence of a person's character or of a trait of his character is inadmissible when offered to prove his conduct on a specified occasion. Subdivision (b) states an exception to that rule and provides that the section does not prohibit the admission of evidence that a person committed a crime when such evidence is relevant to prove *"some fact"* (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than the defendant's disposition to commit such acts. (Italics

added.) The evidence can be in the form of an opinion, evidence of reputation, or specific instances of conduct.

A series of significant recent Supreme Court decisions has given further definition to the section. ■ In *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883], the Supreme Court held other crimes evidence can only be considered for admission when it relates to an issue actually contested in the case. The court noted that the mere entry of a plea of not guilty does not necessarily put all potential issues in controversy. If the evidence of other crimes is found to be relevant to one of the contested issues, the court must then engage in a balancing analysis under section 352 of the Evidence Code to determine whether the prejudicial effect of such evidence outweighs its probative value. If the prejudicial effect does outweigh the perceived probative value, the evidence must be excluded. (Later cases to the same point are: *People* v. *Salazar* (1983) 144 Cal.App.3d 799 [193 Cal.Rptr. 1]; *People* v. *Yu* (1983) 143 Cal.App.3d 358 [191 Cal.Rptr. 859]; *People* v. *Barney* (1983) 143 Cal.App.3d 490 [192 Cal.Rptr. 172]; *People* v. *Martinez* (1982) 135 Cal.App.3d 819 [185 Cal.Rptr. 610].)

In numerous instances in older cases other crimes evidence had been admitted under the guise of showing identity or intent. On closer scrutiny, those cases were in error. In a well-reasoned opinion setting forth the history of the admittedly inconsistent rulings of the court on this point, the Supreme Court in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], indicated its disapproval of those older cases. *Tassell,* following the principle of *Thompson,* held that a disputed issue has to exist to which the evidence has relevance to justify the consideration of its admission. Considerations of prejudicial effect do not even arise unless the evidence relates to an ultimate fact that is " 'actually in dispute.' " (*Thompson, supra,* at pp. 315-318; *Tassell, supra,* at p. 84.) The theory that evidence of other crimes is admissible to "corroborate the victim" as held in *People* v. *Covert* (1967) 249 Cal.App.2d 81 [57 Cal.Rptr. 220], was discredited. (*People* v. *Tassell, supra,* at pp. 85-89.)

In September 1984 the Supreme Court reversed a conviction of murder with special circumstances because of the admission of evidence of uncharged prior offenses in *People* v. *Alcala* (1984) 36 Cal.3d 604 [205 Cal.Rptr. 775, 685 P.2d 1126]. The evidence was purportedly offered on a fundamental issue in the case, the identity of the defendant as the abductor and killer of the minor victims. Footnote 18, page 634 of 36 Cal.3d states that the separate rule in sex cases that prior sex offenses may be admitted to show common plan, scheme, or design without further examination of

their bearing on intent, identity, or any other disputed issue has been overruled.[2]

In December 1984 in *People* v. *Bigelow* (1984) 37 Cal.3d 731 [209 Cal.Rptr. 328, 691 P.2d 994], the court found evidence of other crimes was improperly admitted under the standard of *People* v. *Thompson, supra.*

This line of cases would appear to have set at rest the entire issue of other crimes evidence in sex cases. Not so, however, for in *People* v. *Moon* (1985) 165 Cal.App.3d 1074 [212 Cal.Rptr. 101], in March 1985[3] a unanimous decision of the First District Court of Appeal held that the *Tassell* court "seemed to leave open the possibility that in a proper case, prior sex offenses would be admissible on the theory that they and the charged offenses were part of a single plan." (*Id.,* at p. 1081.) The court then held that evidence of not remote uncharged incidents of sexual molestation of the prosecuting witnesses was properly admitted in Moon's trial and affirmed his conviction. The *Moon* decision followed the reasoning of *People* v. *Sylvia* (1960) 54 Cal.2d 115 [4 Cal.Rptr. 509, 351 P.2d 781] and *People* v. *Barney* (1983) 143 Cal.App.3d 490 [192 Cal.Rptr. 172]. *Barney,* like *Moon* was an incest-type case. *Barney* and *Moon,* based on *Sylvia,* held that the uncharged sex offenses may evidence the emotion of sexual passion toward a particular individual. Such evidence tends to prove defendant would act to realize his desire. It is not dependent upon defendant's bad character or his disposition to do wrongful acts.

We agree with *Moon* that absent express guidance from the Supreme Court, we do not conclude that *Sylvia*[4] is no longer the law.

However, as the court said in *Moon*: "The rule is not absolute; an exception exists where the only prosecution evidence of the other offenses, as well as the only prosecution evidence as to the charged offenses is the uncorroborated testimony of the prosecuting witness. Under those circumstan-

---

[2]"A separate rule had developed in sex cases that prior sex offenses may be admitted to show 'common plan, scheme or design,' without further examination of their bearing on intent, identity, or any other disputed issue, if they 'are not too remote and are similar to the offense charged and are committed with persons similar to the prosecuting witness . . . .' (See *People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Kelley, supra,* 66 Cal.2d 232, 243.) Whatever relevance the *Thomas-Kelley* rule has in this case, where no sex offense is charged, *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] has effectively overruled it. (Pp. 87-89, & fn. 8.)" (*People* v. *Alcala, supra,* 36 Cal.3d at p. 634, fn. 18.)

[3]The petition for rehearing was denied. The petition for review was denied by the Supreme Court May 23, 1985.

[4]Our conclusion presupposes that the defendant has had notice of the prosecution's intention to present such evidence through discovery or other pretrial process and an opportunity to litigate its admissibility out of the presence of the jury.

ces, the basic issue is the veracity of the witness and the defendant, and the trier of fact is not aided by the uncorroborated testimony of the prosecuting witness as to the prior offenses. (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 574.)'' (*People* v. *Moon, supra,* 165 Cal.App.3d at p. 1079.) In *Moon* and *Barney* there was corroborating evidence of the uncharged offenses in that the children's testimony tended to corroborate one another. Also, in *Moon* the defendant had admitted partial culpability to their mother and, in *Barney,* the court recited similarity of facts. There is no similar corroboration in this case.

In this trial, the daughter testified the defendant would call her and her brother into the living room. She stated, "[m]ost of the time it was 'K . . . and B . . ., get out here.' " But only one of them would go into the living room. On one occasion she woke up, went into the living room, and observed defendant and her brother lying under a sheet on the floor. She testified, "[W]ell, I seen his hand by his [the brother's] penis, but I am not sure they were doing anything." "[Her brother] . . . would say things, like, 'Pappa said to me if I rubbed him, he would rub me,' and stuff like that, and start laughing." This testimony may constitute corroboration of the boy's testimony, but not of the evidence in dispute. ▇▇ The disputed evidence of the Razzak Street molestations came from the daughter, and her version is entirely uncorroborated. Thus, the testimony of the daughter relating acts of molestation that were not charged in the case did not meet the test of the *"Moon-Barney-Sylvia"* exception to *Tassell* and its admission was error.

The issue in this trial was whether or not the defendant had engaged in a pattern of sexually molesting his children.

In this case we find there was no undue prejudicial effect in the erroneous reception of the Razzak Street molestation evidence. The fact there was no corroboration of the girl's testimony makes it inadmissible as we have shown, but it also makes the evidence virtually valueless. The issues in this trial rested entirely on the credibility of the witnesses, the children versus the defendant. This jury simply believed the children and did not believe the defendant's denials. It is impossible to imagine that the testimony of the 1979 incidents added anything to the basic credibility issue. Even reading the cold record, the defendant's denials ring false and hollow, and it is not surprising that the jury believed the children rather than the defendant.

Defendant complains that the district attorney, in argument, made reference to the 1979 molestation. That is true. Defense counsel effectively countered that argument with his own by pointing out that the defendant had had custody of the children restored by court order in April 1983 after

an investigation. He argued that he was sure the daughter had been interviewed "many times by the social workers—there has been no mention whatsoever of any molestation that occurred over on Razzak."

Appellant requested the court instruct the jury with CALJIC No. 2.01 (Sufficiency of Circumstantial Evidence—Generally). This instruction was properly refused. There was no material circumstantial evidence introduced in this trial. ■ The instruction is proper or required only where the prosecution's case rests substantially or entirely on circumstantial evidence. (*People* v. *Malbrough* (1961) 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30].)

The judgment of conviction is affirmed.

Thompson, Acting P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 7, 1986.