[No. F002455. Fifth Dist. June 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS PORTILLO BERMUDEZ, Defendant and Appellant.

**COUNSEL**

Bruce S. Wiener, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOOLPERT, Acting P. J.**—Late at night a young woman awakes and feeds her six-week-old infant. In doing so she appears nude for some time in a well lit bedroom which has no window drapes or shades. During this time she becomes aware of defendant "peeping" at her from several vantage points. She finishes feeding the baby, turns out the light and pretends to sleep. Having no telephone and no other adult within hearing distance, she does not try to get help.

Defendant, having alighted from his car to urinate in the alley, has seen her and becomes sexually aroused. He tries to enter her house but, he says, not to rape her. In one version of his actions, he tries to open the exterior doors, but fails. Soon he tries again and is able to open the front door. He transforms the fact the door is unlocked into an invitation of some kind. In a different version, he enters through a window. When questioned later he is sure he had sex in mind while watching the naked victim, but when confronted with a question concerning the nature of his intent as he made his entry into the house, his memory fades: "I'm blank on that."

Defendant approaches the victim. He is unsure what she said when he reached her bed. Perhaps her first words were: "Do anything you want, just don't hurt the baby." The victim testifies she said: "Take anything you want, just don't hurt the baby." Although the consumption of beer clouded defendant's memory as to the exact version, he thought she was inviting him to share her bed and body, which he proceeded to do. After intercourse the victim made a false statement that her husband would return from work soon. Unimpressed, defendant engaged again in sexual intercourse.

Except for the foregoing, no intelligible words had been exchanged. Then, responding to his persistent demands to be orally copulated, the victim agreed to do so if she could first move the baby from her side where the infant had been all this time. Unable to satisfy his demand for oral copulation, she submitted to further sexual intercourse. He remembers no discussion concerning oral copulation.

As he was pulling his pants back on, two prescription drug bottles fell out and the victim secretly secured them. After defendant left, the victim thought she heard his car start. She ran to her mother's house on the front part of the lot and then into the street where she hailed a cab. The driver contacted her mother and husband; they notified the police, who traced defendant by the prescription bottles.

We are challenged to upset the guilty verdict because the testimony of the victim and defendant reveals there never was one word of threat; also there was no protest until the oral copulation demands. Simply put, defendant urges that it is not rape when a Peeping Tom gains access to a house late at night and without introduction, has intercourse with the woman previously seen unclothed in her bedroom feeding a baby, the whole affair being "consensual" because the woman only pleads with him not to hurt the baby.

We decline defendant's invitation. The law has had good reason to require proof of physical force or of clear threats of bodily injury in the sometimes ambiguous factual circumstances arising between acquaintances whose intentions can be misinterpreted. However, in cases such as this one in which a woman is sexually victimized by a stranger who seeks sexual satisfaction in an atmosphere of potential aggression, assertions of implied invitation and disclaimer of having used physical force fail to impress jurors and courts alike. Naivete may excuse boorishness, but a criminal invasion of sexual privacy does not become a nonrape merely because the victim is too fearful or hesitant to say something to the effect that "I guess you know I don't want you to do this." With a bit more elaboration we so hold.

Defendant was charged with rape (Pen. Code, § 261, subd. (2)),[1] oral copulation (§ 288a, subd. (c)), and burglary (§ 459). It was further alleged that the burglary was of an inhabited house in the nighttime.

After a two-day jury trial, defendant was found guilty of burglary and rape but, as the jury was unable to agree on the oral copulation charge, a mistrial was declared as to that count. The court sentenced defendant to the

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

middle term of six years for the rape and the middle term of four years for the burglary, the burglary term being stayed pursuant to section 654.

I.

### Sufficient Evidence Supported the Rape Conviction.

 Defendant contends the evidence failed to support the finding that his sexual acts upon the victim were accomplished by force or fear of immediate bodily injury on the person or another.[2]

Section 261 was amended in 1980 to reflect the point of view that it is often risky for the victim to resist the sexual assault. Subdivision (2) had read: "Where a person resists, but the person's resistance is overcome by force or violence." Subdivision (3) had provided this alternate to resistance: "Where a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution. . . ." The amendments modified the force and violence aspects of rape and made resistance of significance only when the victim's will power is overcome by mind changing substances for which the accused is responsible. (*People* v. *Salazar* (1983) 144 Cal.App.3d 799, 806-808 [193 Cal.Rptr. 1].)

In reviewing the sufficiency of the evidence we note this pertinent *Salazar* comment: " 'By shifting the focus from the quality of physical resistance to the overbearing of the victim's will, the Legislature reaffirmed its earlier value choice that a woman could be outraged although not physically beaten. Pen. Code § 263.' " (*Id.*, at p. 807.) Section 263 provides: "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. . . ."

We are well aware that section 261.6, enacted in 1982, became effective after the events in this case. It provides: "In prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

---

[2]Section 261 reads in pertinent part: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . .

"(2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another.

"(3) Where a person is prevented from resisting by any intoxicating, narcotic, or anaesthetic substance, administered by or with the privity of the accused."

Though not applying section 261.6 to this case, we find nothing novel in its emphasis on positively displayed willingness to join in the sexual act rather than mere submissiveness. The law has outgrown the resistance concept; a person demanding sexual favors can no longer rely on a position of strength which draws no physical or verbal protest.

The evidence in this case would suffice under the views expressed in *Salazar* in which the victims and defendants had been "dating friends" before the criminal acts took place. We contrast our facts in which the victim was a stranger to defendant and was assaulted in her own home after his uninvited entry. Whether an objective or subjective standard is used, the male in this setting has an overwhelming hurdle to overcome if he seeks to argue consent.

The facts discussed in *People* v. *La Salle* (1980) 103 Cal.App.3d 139 [162 Cal.Rptr. 816], took place during the time when resistance was required unless prevented by threats of "great and immediate bodily harm." As in our case, the victim was raped by a stranger. The defendant persuaded the victim's small daughter to enter his car, and, because of his "tone of voice" and the mother's concern for her child, she accompanied him and submitted to intercourse. He too claimed there were no express or implied threats and she did not resist his advances. Obviously, in each case the child was used as a device to get to the mother. In *La Salle* the defendant said: "If you want her, you have to get in the car with me." In our case the victim and the defendant both agree that she said: ". . . just don't hurt the baby."

Subdivision (2) of section 261 makes it clear that rape may be accomplished by acts which cause fear of immediate bodily injury to the victim "or another." No longer does the section use the word "threat" in connection with the appearance of imminent harm to the victim or someone close to the victim. Only in subdivision (6) of the section is "threat" a factor, and then it applies to threats of retaliation in the future. In any event, for years appellate courts have affirmed jury verdicts which depended upon implied threat.

In deciding whether the assault was "consummated by force or fear," we look to the circumstances of the case. (*People* v. *Hunt* (1977) 72 Cal.App.3d 190, 194 [139 Cal.Rptr. 675].) Even prior to the 1980 amendments, when the language of "threats of great and immediate bodily harm" was abandoned in favor of "against a person's will by means of . . . fear of immediate and unlawful bodily injury," *verbal* threats were not critical to conviction. "Threats" could be implied from the circumstances or inferred from the assailant's conduct. (*Id.,* at pp. 194, 198; *People* v. *La Salle,*

*supra,* 103 Cal.App.3d 139, 148.) Quite obviously, the amendment has validated the unsophisticated notion that for the victim to entertain a reasonable fear, the assailant need not explicitly threaten harm by words or deeds. ■ Under some circumstances a conviction can be sustained even where the victim entertains an unreasonable fear of the assailant, if the assailant knows and takes advantage of the unreasonable fear. (*People* v. *St. Andrew* (1980) 101 Cal.App.3d 450, 466 [161 Cal.Rptr. 634].)

■ Here, the victim was isolated and alone. The only people within hearing or running distance were her infant daughter and several unattended young children in a nearby house. The victim's reaction to the situation included the added knowledge that harm might befall any of the children if she acted rashly. The victim was faced with a man who had already "peeped" into her windows for some time and forced entry into her home. The defendant's criminal or, at least, callous disposition was obvious to the victim. We cannot imagine lack of fear in these circumstances. Defendant's protests to the contrary are unreal. Although drunk, defendant was able to drive to the location of the house, become sexually aroused and find a way into the house in the dark. The "willing" victim's proviso—"Just don't hurt the baby"—was as stark and pointed as "Wrong Way" posted on a freeway offramp. Failure to understand the import of such a statement is no excuse in a court of law.

## II.

### Sufficient Evidence Supported the Burglary Conviction

Defendant next contends that insufficient evidence supported his conviction of burglary. Particularly, he alleges that the evidence did not support a finding of specific intent to commit a felony at the time he entered the victim's dwelling. ■ "The felonious intent which supports a burglary charge must usually be inferred from all the facts and circumstances disclosed by the evidence, rarely being directly provable. [Citations.] 'When the evidence justifies a reasonable inference of felonious intent, the verdict may not be disturbed on appeal.' [Citation.]" (*People* v. *Reeves* (1981) 123 Cal.App.3d 65, 71 [176 Cal.Rptr. 182], disapproved on another point in *People* v. *St. Germain* (1982) 138 Cal.App.3d 507, 522, fn. 9 [187 Cal.Rptr. 915]; see also *People* v. *Walls* (1978) 85 Cal.App.3d 447, 452 [149 Cal.Rptr. 460].)

Defendant testified that he became sexually aroused while peeping in at the victim and remained so when he entered her dwelling. His intent when entering the door "probably might have been to have sex, but I wasn't gonna rape anybody." The jury could quickly agree that he had such im-

pulses but reject his protestations. Factual conclusions by jurors supported by sufficient evidence are not to be upset on appeal. (*People* v. *Reeves, supra,* 123 Cal.App.3d at p. 72.)

### III.

#### THE TRIAL COURT HAD DISCRETION TO IMPOSE THE MIDDLE TERM.

Finally, defendant protests the trial court's imposition of the middle term for the rape and burglary convictions. Defendant claims that a series of mitigating factors, pointed out to the trial court at the sentencing hearing, mandated the imposition of the lower base term. Defendant also complains that the court erroneously considered the oral copulation accusation as an aggravating factor, even though the jury had been unable to decide upon conviction on that count. The sentencing court considered all the factors suggested by defendant's counsel, rejecting all but one of them as mitigating, and really decided not to impose the *aggravated* term in light of that one mitigating factor.

In rejecting defendant's claim of lack of violence, the trial court expressed the opinion that although the crime was not violent in the ordinary sense, the "perversion aspect" of it was violent. ■ The trial court is entitled to weigh the whole record in reaching its decision and may find matters in aggravation absent a jury finding upon those circumstances. The trial court may use an alleged offense, upon which the jury was unable to reach a verdict, in aggravating a sentence. (*People* v. *Fulton* (1979) 92 Cal.App.3d 972, 976 [155 Cal.Rptr. 327].) Here, the court did not use the oral copulation count to aggravate the term, but merely to rebut defendant's assertion of the nonviolent nature of his acts. This was a permissible use of the facts.

The defendant has failed to show that the trial court abused its discretion. (*People* v. *Hubbell* (1980) 108 Cal.App.3d 253, 260 [166 Cal.Rptr. 466].)

The judgment is affirmed.

Martin, J., and Hamlin, J., concurred.