[No. F005416. Fifth Dist. Dec. 29, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT WARD, Defendant and Appellant.

462

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Antonia D. Radillo and Joan W. Cavanagh, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and George M. Hendrickson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WOOLPERT, Acting P. J.**—Defendant appeals from a judgment convicting him of multiple sex offenses: six counts of Penal Code[1] section 288, subdivision (a) (lewd and lascivious conduct); six counts of section 288, subdivision (b) (forcible lewd and lascivious conduct); six counts of section 288, subdivision (b) (forcible lewd and lascivious conduct); three counts of section 261, subdivision (2) (rape by force or fear); and three counts of section 261.5 (unlawful sexual intercourse with a minor). The trial court sentenced defendant to a 75-year term in state prison, consisting of 9 consecutive 8-year aggravated terms for the section 288, subdivision (b) and section 261, subdivision (2) counts, plus a 3-year enhancement for a prior prison term (§ 667.5, subd. (c)(1)). The court stayed execution of the sentence on the remaining counts pursuant to section 654.

### THE FACTS

In early December 1982, defendant lived in Sonora with his wife, Karen, and her 13-year-old daughter by a prior marriage, M.C. Defendant and his wife were married in 1979 while he was serving a term of imprisonment for second degree murder at the California Medical Facility in Vacaville. After his February 1981 release, defendant joined his wife and stepdaughter in Modesto. Defendant told M. C. in great detail about the murder he had committed.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

In November 1981, a killing occurred in the garage of the Ward residence. The police arrested and charged defendant with the murder. Defendant was eventually acquitted of the charge and released in December 1982. Following his release, however, defendant told his stepdaughter he killed the man in the garage.

Late one evening before Christmas 1982, M.C. was watching television alone in the family's living room. Her mother was in bed, asleep. Defendant entered the living room and "got under the covers" which were wrapped around M. C. He threatened to "take [M.C.'s] mother out" if the girl did not do what he wanted. By his frequent use of the expression "take [someone] out," M. C. understood defendant to mean he would kill her mother. Defendant then undressed his stepdaughter and had sexual intercourse with her.

Thereafter, defendant had sexual intercourse with M.C. approximately once a week until March or April of 1984. Defendant did not always threaten to kill his wife before having intercourse with the girl. Rather, he repeated the threat at least twice a month throughout this period.

During the time defendant, M.C. and her mother lived together, defendant frequently demonstrated his interest and skill in the martial arts. He boasted to M.C. about the many ways he knew of killing a person. He showed M.C. how to use "nunchucks" which he explained could be used to break a person's bones. He also displayed a needle which he claimed had a poison tip capable of causing death.

Defendant moved out of the family home in May 1984. M.C. was later examined by a pediatrician on the Child Trauma Team at the Children's Hospital in Oakland. He testified M. C. had experienced repeated sexual intercourse. In the doctor's opinion there were a number of reasons for concluding M.C. had not been involved with multiple sex partners. Further, M.C. exhibited symptoms of psychological stress: When the doctor asked her who had done it, M. C. spoke defendant's name so softly that she had to repeat it three times for him to understand her response.

DEFENSE

Defendant denied committing any offense. He speculated Karen Ward married him for an inheritance he received after his release from prison. He believed the mother pressured her daughter into making up the charges. There was further evidence that while defendant was in jail on the 1981 murder charge, the girl first reported, but later recanted, her report of being

molested by defendant. A school acquaintance also testified M.C. tended to lie.

## I. Fear of Immediate and Unlawful Bodily Harm

Defendant argues he did not threaten *immediate* harm, within the meaning of section 261, subdivision (2),[2] and therefore did not rape M.C. as charged. According to defendant, the victim's testimony made clear that any harm to her mother would occur in the future. He notes the Legislature amended section 261 in 1981 to include acts accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person.[3] From this amendment and by citation to case law preceding the 1981 amendment, defendant concludes the threatened harm was not likely to occur at any moment and was therefore not immediate under section 261, subdivision (2).

The Attorney General notes the prosecutor inexplicably failed to charge violations of both subdivisions (2) and (6) of section 261. Obviously, he suggests in factual situations where threatened harm is borderline in terms of imminence, a cautious district attorney should plead both subdivisions. According to appellant, the pleading error must result in a reversal and dismissal because jeopardy principles preclude a retrial on these counts.

The premise of defendant's attack on the rape convictions, according to the Attorney General, is that the victim's mother was allegedly not "present" when the sexual intercourse occurred. The Attorney General argues, however: (1) there is no evidence that the mother was out of the house at the time of the attacks; and (2) there is no "presence" requirement in section 261, subdivision (2). Further, defendant's repeated threats, coupled by his apparent ability and previous willingness to take human life, clearly show an intent to act without the occurrence of any intervening object, cause or agency, justifying defendant's conviction under section 261, subdivision (2).

By way of background, the jury convicted defendant of raping his then 14-year-old stepdaughter on three occasions: "On or about October and

---

[2]Section 261, subdivision (2), provides: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . [¶] (2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another."

[3]Section 261, subdivision (6), provides: "Where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. As used in this paragraph 'threatening to retaliate' means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death."

November, 1983" (count 13), "on or about December 1983 and January 1984" (count 15), and "on or before February 1984 and March 1984" (count 17). Except for the first incident of sexual intercourse before Christmas 1982, which the prosecutor *did not charge,* the stepdaughter could offer few distinguishing details about the rapes. The stepdaughter testified defendant had sexual intercourse with her once or twice a week following the first incident in 1982 until approximately March 1984. She added that while the threats did not always precede the intercourse, at least twice a month, defendant would repeat his threat to kill the mother before the sexual intercourse occurred. *However,* the stepdaughter did not recall whether her mother was home during the attacks.

In essence, defendant claims his conduct fell within section 261, subdivision (6), rather than section 261, subdivision (2), that is: Any harm to M.C.'s mother could only occur in the future, not immediately. With such an argument, there is a temptation to apply dictionary-like definitions to resolve whether this is a case of unlawful sexual conduct accomplished against the victim's will: (1) by means of fear of *immediate* and unlawful bodily injury to the mother; or (2) by threatening to retaliate *in the future* against the mother.[4] We will nevertheless avoid that temptation and conclude M.C.'s submission to defendant was a reasonable response to his conduct and satisfied section 261, subdivision (2).

To begin, we find no instances in which an appellate court has defined the term "immediate" as used in the rape statute.[5] Indeed, there are few cases in which the threatened harm was directed at another person. (See *People* v. *Bermudez* (1984) 157 Cal.App.3d 619 [203 Cal.Rptr. 728], and *People* v. *LaSalle* (1980) 103 Cal.App.3d 139 [162 Cal. Rptr. 816].) We note in both *LaSalle* and *Bermudez* the other person whose well-being was threatened or feared for was the victim's small child who was present at the time of the conduct.

In *LaSalle* the victim and her two-and-a-half-year-old daughter had been walking along a street when defendant offered the mother a ride. After the mother rejected defendant's offer, defendant pursued the two, somehow persuaded the child to get inside his car and then told the mother, " 'If you

---

[4]In this regard, "immediate" is defined as: "*a*) not separated in space; in direct contact; closest; nearest; also, close by; near *b*) not separated in time; acting or happened at once; without delay; instant *c*) of the present time. . . ." (Webster's New World Dict., 2d Coll. Ed., p. 701.) "Future" is defined as "that is to be or come; of days, months, or years ahead. 2. indicating time to come. . . ." (*Id.* at p. 568.)

[5]Our research included case law interpreting the current wording of section 261, subdivision (2), "fear of immediate and unlawful bodily injury," as well as case law interpreting the language of former section 261, subdivision (4), "threats of great and immediate bodily harm. . . ." (The statute was amended in 1980.) (Stats. 1980, ch. 587, p. 1595.)

want her, you have to get in the car with me.' " (*People* v. *LaSalle, supra,* 103 Cal.App.3d at p. 143.) After the mother entered the car, defendant had sexual intercourse with her. She testified of her fear that the defendant would harm her daughter if she did not accede to his demands. (*Id.* at p. 147.)

In *Bermudez,* the defendant entered a house where his victim and her six-week-old infant were alone. The defendant approached the woman, who was in bed with her baby at her side. The victim said, "Take anything you want, just don't hurt the baby." The defendant proceeded to have sexual intercourse with the woman. (*People* v. *Bermudez, supra,* 157 Cal.App.3d at pp. 621-622.) The facts in *LaSalle* and *Bermudez* clearly illustrate proximity in terms of time and place.

After the 1981 addition of subdivision (6) in section 261, any dispute over "when" the threatened conduct will occur appears to be irrelevant, if properly charged. With subdivisions (2) and (6) of section 261, the Legislature has covered the spectrum of time in which the harm could occur. It no longer matters whether the threatened harm will occur immediately or in the future; in either situation the conduct amounts to the same crime, rape.

By its 1981 adoption of section 261, subdivision (6), the Legislature has, perhaps unwittingly, created a charging problem for prosecutors. The Legislature might have incorporated the threaten-to-retaliate-in-the-future language into subdivision (2). Case law already read into subdivision (2) the reasonable possibility requirement contained in subdivision (6). (See *People* v. *Hunt* (1977) 72 Cal.App.3d 190, 200 [139 Cal.Rptr. 675].) If the subdivision (6) language had been added to subdivision (2), the question concerning when the threatened conduct would occur would be only a matter of proof, not one of pleading.

■ However charged, the critical issue is whether the victim's submission was a reasonable reaction to the defendant's threat, express or implied. In effect, the Legislature has said the victim's submission may be a reasonable response regardless of whether a defendant creates fear of *immediate* harm or threatens to retaliate *in the future.*

Having covered the entire time frame within which threats are ordinarily directed, we presume the Legislature recognized that under the usual circumstances surrounding sexual assaults, the victim is unable to use discreet mental processes to distinguish between "immediate" action and future retribution. The law protects against unfounded charges by its requirement that the victim act upon an objectively reasonable basis in

concluding there is a possibility the perpetrator will execute the threat if the victim does not submit.

Even then, the reasonable reaction requirement considers the victim's mental condition. (*People* v. *St. Andrew* (1980) 101 Cal. App.3d 450, 465-466 [161 Cal.Rptr. 634].) Further, this court in *People* v. *Jones* (1984) 155 Cal.App.3d 153, 169 [202 Cal.Rptr. 162], interpreted the rule formulated in *St. Andrew* regarding assault on particularly vulnerable victims to extend the consideration of the victim's vulnerability not only to the victim's age, education and mental faculties, but also to the duration of the sexual involvement, the position of trust, dominance and authority held by the perpetrator, and the perceptions of the victim in evaluating whether there was a threat.

A case such as the present one requires us to realistically consider the facts bearing on the inevitability of the threatened harm. Here the victim was a 14-year-old girl who had lived with her mother and stepfather as a family unit for approximately three years at the time of the charged acts. The threatened harm was directed at her mother. During the time the charged offenses occurred, her mother was unemployed, by her own choice. A fair inference may be drawn that the mother was not away from the house for long periods of time and that her daughter knew this. Further, depending on the time of day that the intercourse occurred, M.C. testified her mother may have been home.

In addition, the girl knew her stepfather was a convicted murderer. He also spoke frequently to her of killing people. He demonstrated to the girl numerous ways, using martial arts, to kill a person. He also boasted he could kill a person with an allegedly poisonous needle which he possessed. Further, it is striking to note that a killing had been committed in the family's garage while M.C. was in the house. Although a jury acquitted defendant of the murder charge, he later told his stepdaughter he committed the killing and described details of it to her. As defendant's appellate counsel concedes: "In appellant's case, there is no doubt that he possessed the ability to carry out his threats. . . ." Finally, on cross-examination M.C. was asked: "[D]id it ever occur to you that maybe he wouldn't take your mom out?" The response was a simple "No."

M.C.'s knowledge of defendant's propensity to kill and apparent cavalier attitude towards life suggests more than the reasonableness of her fear. Such knowledge also leads to a reasonable inference the girl feared if she did not submit, her mother would be subject to immediate harm: Neither time, space nor intervention of a third party could or would stop defendant from killing her mother.

A jury could conclude that, in the girl's mind, as a reasonable person of that age, only her submission to these ongoing sexual attacks would prevent her mother's immediate death. At the minimum, the temporal aspect of the fear was at that point in the spectrum of time where "immediate" and "in the future" arguably become merged and indistinguishable. We therefore find no basis for reversing defendant's convictions for violation of section 261, subdivision (2). We do not have a case in which the threatened conduct could only fall into a subdivision (6) time period.

## II. ADMISSIBILITY OF PRIOR UNCHARGED SEXUAL OFFENSES

Defendant also contends the trial court erred by permitting M.C. to testify he fondled her over a period in excess of one year before the sexual intercourse commenced. Such evidence of prior uncharged crimes was inadmissible, according to defendant, pursuant to *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], and other decisions. Defendant concludes such error requires reversal under *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

The Attorney General argues such evidence was admissible to prove defendant's lewd intent, as an element of lewd and lascivious conduct under section 288, and his sexual interest in M.C. Alternatively, the Attorney General argues the evidence was not unduly prejudicial.

At trial, defense counsel moved to exclude any reference to defendant's fondling of his stepdaughter. The prosecutor sought admission of defendant's initial assaultive conduct towards M.C. to "set the stage" for the charged conduct. The court admitted the evidence in the apparent belief that prior uncharged sexual conduct with the victim was admissible under *People* v. *Thomas* (1978) 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433].[6]

While the trial in this case was conducted in January 1985, counsel and the court were apparently unaware the state Supreme Court had recently disapproved *Thomas* in *People* v. *Tassell, supra,* 36 Cal.3d 77.

The *Tassell* court reviewed the case law surrounding the "common design or plan theory," acknowledging at the outset that its pronouncements in the area of admissibility of "other crimes" evidence had not been entirely consistent. (*People* v. *Tassell, supra,* 36 Cal.3d at p. 83.) It explained the

---

[6]The jury was later instructed: "Evidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial. Such evidence if believed was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes." (CALJIC No. 2.50, as modified.)

inconsistencies were due to successive failures to relate the suggested relevance of proffered evidence to issues "actually in dispute." (*Id.* at p. 84, citing *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883].)

In turn, the *Tassell* court examined its past decisions and those of some appellate courts on the issue. The court held the rule in *Thomas* and other cases ignored the principle that "other crimes" evidence must relate to an issue actually in dispute. *Tassell* effectively overruled *Thomas* in this regard. (*People* v. *Tassell, supra,* 36 Cal.3d at pp. 87-89 and fn. 8; *People* v. *Alcala* (1984) 36 Cal.3d 604, 634, fn. 18 [205 Cal.Rptr. 775, 685 P.2d 1126].)

Under the facts in *Tassell,* there was (1) no issue of identity, (2) no ambiguity about the defendant's intent, and (3) "no rational argument" which could be made to support the contention that three sets of sex crimes were part of one larger plan. Therefore, the court concluded the "common plan or scheme" rationale was "merely a euphemism for 'disposition.' " (*People* v. *Tassell, supra,* 36 Cal.3d at p. 89.)

■ Despite the Attorney General's urging, intent was not a disputed issue in this case. The victim of the alleged crimes testified to completed acts of sexual intercourse. Because of the nature of such an act, intent would be presumed. The victim's credibility becomes the real issue. In such a case, "accidental touching," or mistake, would be an unlikely defense. Only when the defense admits the apparently sexual act did occur, but denies a sexual intent, does intent become a legitimate issue. (*Id.* at p. 88, fn. 7; *People* v. *Kelley* (1967) 66 Cal.2d 232, 242-243 [57 Cal.Rptr. 363, 424 P.2d 947].)

■ Citing *People* v. *Barney* (1983) 143 Cal.App.3d 490 [192 Cal.Rptr. 172], the Attorney General has also argued the fondling testimony was admissible to show defendant's sexual interest. An exception to the *Tassell* holding appears to exist in cases involving prior uncharged sexual offenses with the prosecuting witness. "[E]vidence of other, not too remote, sex offenses with the prosecuting witness is admissible because it is relevant to show a 'lewd disposition or the intent of the defendant' toward that witness." (*People* v. *Moon* (1985) 165 Cal.App.3d 1074, 1079 [212 Cal.Rptr. 101].) According to *Barney* such evidence tends to prove defendant would act to realize his desire and is not dependent upon defendant's bad character or his disposition to do wrongful acts. (*People* v. *Barney, supra,* 143 Cal.App.3d at p. 494.)

However, this possible exception to *Tassell* does not apply where the only prosecution evidence of the other offenses, as well as the only prosecution

evidence as to the charged offenses, is the uncorroborated testimony of a prosecuting witness. Under those circumstances, the credibility of the prosecutrix and the defendant is the basic issue. The trier of fact is not aided by the uncorroborated testimony of the prosecuting witness about the prior offenses. (*People* v. *Moon, supra,* 165 Cal.App.3d at p. 1079.)

■ There was some corroboration of M.C.'s testimony as to the charged events, in the form of a doctor's testimony regarding findings from a physical examination of M.C. There was, however, no corroboration of her testimony with respect to the fondling. Thus the admission of such evidence here was error. (*People* v. *Brunson* (1986) 177 Cal.App.3d 1062, 1069 [223 Cal.Rptr. 439].)

However, the error was not prejudicial. The fondling evidence was mild in comparison to the extensive testimony regarding sexual intercourse which served as the basis for the charged offenses. It appears highly unlikely that M.C.'s retelling of the touching and fondling could have inflamed the jurors, particularly in light of the evidence of defendant's other activities. It is not reasonably probable that in the absence of the court's error a result more favorable to defendant would have occurred. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

III. SECTION 288, SUBDIVISIONS (a) AND (b)

Defendant contends the trial court erred in convicting him of both lewd conduct (§ 288, subd. (a)) and forcible lewd conduct (§ 288, subd. (b)), for each lewd act of sexual intercourse he committed. According to defendant, lewd conduct under section 288, subdivision (a), is a lesser or necessarily included offense of section 288, subdivision (b). (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512].) Alternatively and similarly pursuant to *People* v. *Greer,* at pages 601-604, defendant argues that because section 288 *specifically includes* acts constituting other crimes mentioned in Part 1 of the Penal Code, he could not be convicted of both a violation of section 288, subdivision (a), and section 288, subdivision (b), based on the same conduct.[7]

---

[7]Section 288 provides in relevant part: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years.

"(b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six or eight years."

By contrast, the Attorney General challenges *Greer.* In substance the Attorney General contends there is no legal basis for a rule barring multiple convictions for charged offenses based on the same conduct.

 Nevertheless, recently our state Supreme Court in *People* v. *Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595] noted: "Although the reason for the rule is unclear, this court has long held that multiple convictions may *not* be based on necessarily included offenses." (*Id.* at p. 355.) The court reiterated *Greer's* test for a necessarily included offense: " ' [W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' (*People* v. *Greer, supra,* 30 Cal.2d at p. 596; . . .)" (*Pearson, supra,* 42 Cal.3d at p. 355.)

However, the *Pearson* court rejected *Greer's* rule that "specifically included offenses" could not give rise to multiple convictions: "To begin with, strict application of the rule conflicts with the plain language of section 954, which states that 'the defendant may be convicted of any number of the offenses charged,' and which does not contemplate exceptions for 'specifically included' offenses. Additionally, for our purposes the analysis of *Greer* is not precisely relevant. At the beginning of its discussion the court posed the question whether defendants could be *convicted* of lewd conduct and rape based on the same act. (*People* v. *Greer, supra,* 30 Cal.2d at p. 601.) During the discussion, however, it used the terms 'conviction' and 'punishment' interchangeably, suggesting that the court may have actually been addressing the issue of whether multiple punishments, not multiple convictions, could arise from charges of statutory rape and lewd conduct based on the same act. In fact, the court even rephrased the question in terms of punishment, declaring: 'This court has not considered until now . . . whether a defendant may be *punished* for the same act under both section 288 and another section of part one of the Penal Code.' (*Id.* at p. 603, italics added.) Finally, the discussion of specifically included offenses was essentially dictum because the court had already determined that the judgment would be reversed on other grounds before it reached this issue." (*People* v. *Pearson, supra,* 42 Cal.3d at pp. 357-358.)

Thus, under *Pearson,* defendant's contention, that the trial court erred in convicting him of two separate offenses for the same act of intercourse is meritless unless lewd conduct is indeed a "necessarily included" offense of forcible lewd conduct.

Defendant relies on the use note to CALJIC No. 10.30.1[8] as well as the language of section 288, subdivisions (a) and (b) to support his "necessarily

---

[8]CALJIC No. 10.30.1 is the instruction which defines forcible lewd conduct (§ 288, subd.

included" argument. The use note lends some credence to defendant's position. However, CALJIC's editors do not cite authority for the use note in question and indeed there is no case law to date dealing with lewd conduct (§ 288, subd. (a)) as a lesser or necessarily included offense of forcible lewd conduct (§ 288, subd. (b)).

A resolution of this issue depends on an interpretation of the following words in section 288, subdivision (b): "Any person who *commits* an *act* described in subdivision (a)." (Italics added.) Specifically, does "an act described in subdivision (a)" include the specific intent element of "arousing, appealing to, or gratifying the lust or passion or sexual desires of such person or of such child," or does it refer only to "any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years"?

■ We agree section 288, subdivision (a), is a lesser or necessarily included offense of section 288, subdivision (b).

There is nothing in the legislative history, Senate Bill No. 13 of the 1979 session, to suggest the Legislature sought to create a general intent crime of lewd or lascivious conduct. Rather, the Legislature chose to highlight the element of force for use under other sections in mandating and enhancing prison terms for sex offenders.

The penalty for a violation of subdivision (a) appears to be the same as that for subdivision (b); in each subdivision the specified penalty is a state prison term of three, six or eight years. However, as the appellate court in *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 473-474 [204 Cal.Rptr. 582] noted: "Subdivisions (b) and (a) of section 288 on their face draw a distinction between those lewd acts that are committed by force and those that are not. Because of the application of sections 1203.066, subdivision (a)(1), and 667.6, subdivision (d), the violation of subdivision (b) is manifestly a more serious offense than the violation of subdivision (a). The sentencing court cannot grant probation to a defendant convicted of subdivision (b). (§ 1203.066, subd. (a)(1).) In many cases, a defendant convicted of two or more offenses under subdivision (b) will face a mandatory term in state prison that is at least twice as long as the term available to a defendant who commits multiple offenses under subdivision (a). (§ 667.6, subd. (d).) The consequential statutory distinction between subdivisions (a) and (b) must be given significance, because the Legislature is not presumed to use statutory

---

(b)). While defendant does not quote the use note, presumably he refers to the following language: "It may be necessary to give Instruction 17.10 (1984 Revision) on 288(a) (Lewd Act With Child) as a *lesser included offense* of § 288(b)." (Italics added.)

language in a sense which would render nugatory or redundant important provisions of a statute. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; see *People* v. *Hawes* (1982) 129 Cal.App.3d 930, 939 [181 Cal.Rptr. 456].) Subdivision (b) must therefore proscribe conduct significantly different from that proscribed by subdivision (a)."

 When a jury expressly finds a defendant guilty of both the greater and lesser offense and the evidence supports the verdict as to the greater offense, the conviction of the lesser offense must be reversed. (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763].) In this case defendant does not challenge the sufficiency of the evidence to support the section 288, subdivision (b), convictions. We therefore reverse the six lesser offense convictions for lewd conduct (§ 288, subd. (a)) contained in counts one, three, five, seven, nine and eleven.

IV. FUTURE USE OF CERTAIN STAYED CONVICTIONS

Last, defendant argues this court should prohibit the future use, for any penal or administrative purpose, of the unlawful sexual intercourse convictions on counts 14, 16, and 18, since they arose out of the same conduct which served as the basis for the rape convictions.

As with the previous issue, we have the benefit of our high court's recent thinking on this question in *People* v. *Pearson, supra,* 42 Cal.3d 351. Although it recognized that the issue appeared premature, the *Pearson* court considered the appellant's request that they prohibit the use of more than one conviction based on each criminal act for the purpose of enhancing any subsequent sentences he may receive. The court concluded: "Any subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions. Without such a declaration, it is clear that section 654 prohibits defendant from being disadvantaged in any way as a result of the stayed convictions." (*People* v. *Pearson, supra,* 42 Cal.3d at p. 361.)

Thus, based on *Pearson* which cited this court's decisions in *People* v. *Duarte* (1984) 161 Cal.App.3d 438 [207 Cal.Rptr. 615], and *People* v. *Conner* (1986) 176 Cal.App.3d 716 [222 Cal.Rptr. 311], unless the Legislature declares otherwise, the stayed unlawful sexual intercourse convictions may not be used for any purpose in the future.

The conclusions of this court in *Duarte* and *Conner* related to *use* of two convictions after one driving act (driving while intoxicated *and* while having 0.10 percent or more of alcohol in the blood), and, in particular, the provisions of the Vehicle Code *mandating* "immediate" license suspension or revocation based on the *number* of prior "convictions." (For example, see §§ 13352 and 23190 of the Veh. Code.) Under these limited circumstances, we found it appropriate to make explicit orders against dual use, thereby clarifying the effect of section 654 in precluding improper administrative use of the dual convictions.

Because this case does not involve statutory law mandating administrative sanctions of the kind involved in *Duarte* and *Conner,* and because our high court has made it clear that convictions for which sentences have been stayed pursuant to section 654 may not "disadvantage" a defendant "in any way" unless the Legislature explicitly declares to the contrary, a *Duarte* type order is unnecessary.

The judgment is reversed as to counts one, three, five, seven, nine and eleven, and affirmed as to all other counts.

Martin, J., and Best, J., concurred.